UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

---

GREGORY DEECK, and                          :
THE BRONSON LLC,                            :
                    Plaintiffs,             :
                                            :
            v.                              :          No. 5:24-cv-1929
                                            :
PAUL Z. SINGER, *INDIVIDUALLY*,             :
SINGER FINANCIAL CORPORATION,               :
and BLACKCHAIR FUNDING LLC,                 :
                    Defendants.             :

---

**O P I N I O N**
**Defendants' Motion to Dismiss, ECF No. 13 – Granted**
**Plaintiffs' Motion for Taxation of Costs, ECF No. 20 – Denied**

**Joseph F. Leeson, Jr.**                                    **August 20, 2024**
**United States District Judge**

## I.    INTRODUCTION

This case involves a longstanding debt dispute between the parties.  Plaintiffs Gregory

Deeck and The Bronson LLC filed suit against Defendants Paul Singer, Singer Financial

Corporation, and Blackchair Funding LLC, alleging they collected a debt in violation of the Fair

Debt Collection Practices Act ("FDCPA") and various state laws.  Defendants responded by

filing a motion to dismiss, arguing Plaintiffs lack standing under the FDCPA and have otherwise

failed to state a claim.  For the reasons discussed below, the Court will grant the motion to

dismiss, not for the substantive reasons argued, but because this Court lacks jurisdiction over

Plaintiffs' claims under the *Rooker-Feldman* doctrine.

## II.     BACKGROUND[1]

This case arises out of a dispute between the parties originating in 2013.  *Id.* at ¶ 11.

Plaintiff Gregory Deeck is the sole owner of Plaintiff The Bronson LLC.  Compl. at ¶ 3-4, ECF

No. 1.  Defendant Paul Singer is the sole officer, director, and/or shareholder of both Defendant

Singer Financial Corporation and Defendant Blackchair Funding LLC.  *Id.* at ¶¶ 5-10.

In 2013, Singer Financial commenced an action against Gregory Deeck and Ethel Deeck

(collectively, the "Deecks") to collect a debt in the Delaware County Court of Common Pleas.

*Id.* at ¶ 11.  *See Singer Fin. Corp. v. Deeck, et al.*, No. 13-11507 (Ct. Com. Pl., Del. Co. 2013).

In or around September of 2016, the Court of Common Pleas granted Singer Financial a

confessed judgment against the Deecks for $150,000, to be paid in installments, after adopting a

settlement agreement between the parties. *Id.* at ¶¶ 12, 15.  *See Singer Fin. Corp. v. Deeck, et al.*,

No. 13-11507 (Ct. Com. Pl., Del. Co. 2013).  After again granting judgment against the Deecks

for the same amount plus interest, another settlement agreement was reached by the parties.  *See*

*Singer Fin. Corp. v. Deeck, et al.*, No. 13-11507 (Ct. Com. Pl., Del. Co. 2013) (granting

judgment against the Deecks for the same amount plus interest on or around October 1, 2020,

and adopting a stipulation and settlement agreement entered by the parties in or around March

2021).  As part of the latter settlement agreement, the Deecks had "to provide corporate

information" for three limited liability companies. Compl., Ex. D.  Each of these companies

---

[1]     The facts herein are primarily based on the factual allegations in the Complaint,
supplemented in part by the underlying state court dockets that this Court has taken judicial
notice of. *See Finnegan v. Mikielski*, No. 23-326, 2024 U.S. Dist. LEXIS 106281, at *3 n.3
(W.D. Pa. June 14, 2024) ("Courts within the Third Circuit have held that a court may
take judicial notice of court dockets at the motion to dismiss stage." (collecting cases)); *In re
Congoleum Corp.*, 426 F.3d 675, 679 (3d Cir. 2005) ("We take judicial notice of the state court
proceedings insofar as they are relevant."); *Orabi v. AG of the United States*, 738 F.3d 535, 537
n.1 (3d Cir. 2014) ("We may take judicial notice of the contents of another Court's docket.").

owned a piece of property, including The Bronson, which owned: 1 Boardwalk, Grassy Sounds,

North Wildwood, New Jersey ("Grassy Sounds").  *Id*.  The Deecks were instructed to sell three

properties, including Grassy Sounds, to pay off their confessed judgment.[2]  *Id*.

The Bronson had not paid its property taxes on Grassy Sounds since 2018.  *Id*. at ¶ 20.

Apparently, once Singer learned this information, he, through his company Blackchair, obtained

Grassy Sounds' Tax Sale Certificate and commenced an action to foreclose the property in

another judicial proceeding in New Jersey.[3]  *See id*. at ¶ 17-23.[4]  *See also Blackchair Funding*

*LLC, vs. The Bronson LLC, et al*., No. F-1478-21 (N.J. Sup. Ct. Ch. Div. 2021).  In this judicial

foreclosure proceeding, the Superior Court of New Jersey entered judgment against The

Bronson, and Blackchair obtained indefeasible fee simple title to Grassy Sounds.  *Id*.  Blackchair

then sold Grassy Sounds for $150,000 in 2023.  *Id*. at ¶ 23.

On May 7, 2024, Deeck and The Bronson (hereinafter "Plaintiffs") filed a complaint in

this Court against Singer, Singer Financial, and Blackchair (collectively "Defendants").  *Id*.  In

addition to a variety of state claims, Plaintiffs claim Defendants violated the FDCPA by

obtaining and selling Grassy Sounds without crediting the sale towards Plaintiffs' confessed

judgment.  *Id*. at 27-35.  Defendants filed a Motion to Dismiss for failure to state a claim, and

---

[2]     The facts in the Complaint revolve almost entirely around Grassy Sounds, and Plaintiffs do not further explain what happened to the other two properties the Deecks were supposed to sell to pay their confessed judgment.

[3]     Grassy Sounds appears to have been foreclosed under New Jersey's *In Rem* Tax Foreclosure Act. *See* N.J.S.A. 54:5-85 – 54:5-104.75. This Act is "applicable to tax sale certificates held by municipalities, can only be invoked after four years of nonpayment of general land taxes and two years after the date of the tax sale." *Lakewood v. Block 251, etc.*, 48 N.J. Super. 581, 586 (1958) (citing N.J.S.A. 54:5-104.29). This Act permits *in rem* tax foreclosure actions, has been construed as "designed to expedite the foreclosure of tax liens in favor of the municipality[,]" and can result in a transfer of title to the property. *Id*. at 585-86, 590 (citations omitted).

[4]     Plaintiffs' Complaint includes two paragraph 23s.  Any citation to paragraph 23 therefore refers to both paragraphs.

Plaintiffs filed a Response in opposition.  *See* Mot., ECF No. 13; Resp., ECF No. 16.  The

motion is now ready to be decided.

### III.    LEGAL STANDARDS

#### A.    Motion to Dismiss – Review of Applicable Law

In rendering a decision on a Rule 12(b)(6) motion to dismiss, this Court must "accept all

factual allegations as true [and] construe the complaint in the light most favorable to the

plaintiff."  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v.*

*Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002) (internal quotation marks omitted).

Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the

plaintiff stated a plausible claim. *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 540,

555 (2007)).  However, "the tenet that a court must accept as true all of the allegations contained

in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a

context-specific task that requires the reviewing court to draw on its judicial experience and

common sense").  The defendant bears the burden of demonstrating that a plaintiff has failed to

state a claim upon which relief can be granted. *Hedges v. United States*, 404 F.3d 744, 750 (3d

Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

#### B.    Fair Debt Collection Practices Act ("FDCPA") – Review of Applicable Law

The FDCPA was created "to eliminate abusive debt collection practices by debt

collectors, to insure that those debt collectors who refrain from using abusive debt collection

practices are not competitively disadvantaged, and to promote consistent state action to protect

consumers against debt collection abuses." 15 U.S.C. § 1692(e).  "'As remedial legislation, the

FDCPA must be broadly construed [. . .] to give full effect to these purposes.'"  *Barbato v.*

*Greystone All., LLC*, 916 F.3d 260, 265-66 (3d Cir. 2019) (citation omitted).  Generally,

Plaintiffs suing under the FDCPA must prove four elements: "(1) [the plaintiffs] are . . .

consumer[s], (2) the defendant is a debt collector, (3) the defendant's challenged practice

involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a

provision of the FDCPA in attempting to collect the debt."  *Douglass v. Convergent*

*Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014) (cleaned up).

### C.      *Rooker-Feldman* Doctrine – Review of Applicable Law

"The *Rooker-Feldman* doctrine[5] prevents district courts from mistakenly relying on their

original jurisdiction to engage in appellate review of state-court orders."  *Merritts v. Richards*, 62

F.4th 764, 774 (3d Cir. 2023) (citing *Verizon Md. Inc. v. PSC*, 535 U.S. 635, 644 n.3 ("The

*Rooker-Feldman* doctrine merely recognizes that 28 U.S.C. § 1331 is a grant of original

jurisdiction, and does not authorize district courts to exercise appellate jurisdiction over state-

court judgments, which Congress has reserved to [the Supreme] Court[.]" (citing 28 U.S.C.

§ 1257(a))); *ASARCO Inc. v. Kadish*, 490 U.S. 605, 622, (1989) ("The *Rooker-Feldman* doctrine

interprets 28 U.S.C. § 1257 as ordinarily barring direct review in the lower federal courts of a

decision reached by the highest state court, for such authority is vested solely in this Court.")).

In other words, "*Rooker-Feldman* is a narrow doctrine, limited to cases brought by state-court

losers complaining of injuries caused by previously rendered state-court judgments and inviting

district court review and rejection of those judgments."  *Otto v. Wells Fargo Bank, N.A.*, 693

Fed. Appx. 161, 163 (3d. Cir. 2017) (citing *Lance v. Dennis*, 546 U.S. 459, 464 (2006)).  Four

conditions must be met to dismiss a case on *Rooker-Feldman* grounds: (1) "The federal plaintiff

---

5        The doctrine is derived from two Supreme Court cases: *Rooker v. Fidelity Trust Co.*, 263
U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

must lose in a state-court judicial proceeding;" (2) "The state-court judgment or decree must be

rendered before the federal action was filed;" (3) "The federal plaintiff must invite the review

and rejection of the state-court judgment;" and (4) "The federal plaintiff must complain of

injuries caused by the state-court judgment."  *Merritts*, 62 F.4th at 774.

A plaintiff impermissibly challenging a state-court judgment may do so directly, by

expressly asking a federal court to alter or overturn the judgment, or indirectly, by asking the

federal court to afford relief that in some way nullifies or invalidates the state-court judgment.

*See Labossiere v. PHH Mortg. Corp.*, No. 18-12719, 2022 U.S. Dist. LEXIS 64669, at *5

(D.N.J. April 7, 2022) (explaining that claims may be "an implicit and indirect attack on" a state-

court judgment "rendering them barred by *Rooker-Feldman* . . . [i]rrespective of how the

Plaintiffs label their claims" (internal marks and citation omitted)).  Consequently, when

evaluating whether claims are barred under *Rooker-Feldman*, a district court should look to the

"heart" of a plaintiff's complaint.  *See Downs v. IndyMac Mortg. Servs., FSB*, 560 Fed. Appx.

589, 591 (7th Cir. 2014) (dismissal was warranted under *Rooker-Feldman* where the district

court found that "the 'heart' of [the plaintiff's] suit was her desire to have the state court's

foreclosure judgment invalidated" (citations omitted)).

The Third Circuit has long recognized that plaintiffs seeking to invalidate state-court

judgments from judicial foreclosure proceedings are barred from doing so under *Rooker-*

*Feldman*.  *See Otto,* 693 Fed. Appx. At 163 ("To the extent that [the] complaint can be read to

include a request for the District Court to overturn or negate the state court judgment of

foreclosure, . . . the *Rooker-Feldman* doctrine bars the suit." (citing *In re Madera*, 586 F.3d 228,

232 (3d Cir. 2009); *In re Knapper*, 407 F.3d 573, 581 (3d Cir. 2005))); *Kajla v. U.S. Bank Nat'l*

*Ass'n*, No. 17-8953, 2018 U.S. Dist. LEXIS 33404, at *7 (D.N.J. Mar. 1, 2018) ("In the

foreclosure context, the Third Circuit has repeatedly found that *Rooker-Feldman* bars a plaintiff's

federal claims seeking redress of a state court foreclosure judgment." (collecting cases)).

## IV.    ANALYSIS

Defendants argue that Plaintiffs lack statutory standing to bring a claim under the

FDCPA and fail to state a claim for conversion, unfair trade practices, or unjust enrichment

under Pennsylvania law.  However, the Court need not, and indeed cannot, discuss the merits of

these claims, as this case must be dismissed for lack of jurisdiction under the *Rooker-Feldman*

doctrine.

### A.       The *Rooker-Feldman* Doctrine Bars Plaintiffs' Claims

In its entirety, the heart of the Complaint in this case seeks to challenge or invalidate the

outcome of the foreclosure proceedings in New Jersey.  Plaintiffs are seeking damages which

reflect the proceeds of the sale of Grassy Sounds, the property that was foreclosed upon through

judicial disposition in New Jersey and then later sold by Blackchair for $150,000.  By asking this

Court to award them the value of the sale of Grassy Sounds, Plaintiffs essentially ask the Court

to negate the outcome of the New Jersey foreclosure proceedings.  Plaintiffs' intent to challenge

the outcome of the foreclosure action is made even clearer by their response briefing which

references the Takings Clause of the Fifth Amendment and, while referring to New Jersey's

judicial foreclosure proceedings, asserts that "[f]or decades, the municipalities of New Jersey

have violated this prohibition by way of commercialization of the collection of unpaid property

taxes."  *See* Resp. at 4 (adopting pagination assigned by the Electronic Filing System).

Additionally, although Plaintiffs do not expressly ask this Court to interfere with the underlying

action in the Court of Common Pleas, which is still ongoing and currently up on appeal,

Plaintiffs make clear that the financial recompense they seek is based on their belief that "there

was an obligation to reduce the confessed judgment as a result of the acquisition of that value"

obtained by Defendants through the foreclosure action.  *See* Resp at 5-6.  Plaintiffs' use of the

passive voice cannot obscure that the "obligation" to alter the confessed judgment apparently

belongs to the Court of Common Pleas.  Plaintiffs repeatedly reference the confessed judgment

entered by the Court of Common Pleas and insist that "the confessed judgment in Pennsylvania

must be reduced by *at least* the surplus value of the [foreclosure property] sale."[6] Resp. at 6

(emphasis in original).  However, the proper court to request an amendment to the confessed

judgment, if one is appropriate at all, is the Delaware County Court of Common Pleas, not this

Court.  Nor is this the proper court to seek to nullify the outcome of the New Jersey Superior

Court's foreclosure action.  For those reasons, Plaintiffs' claims are barred by the *Rooker-*

*Feldman* doctrine and this Court must dismiss this case in its entirety for lack of jurisdiction.

### B.      The FDCPA Claim is Untimely

Even if this Court had jurisdiction over this action, which it does not, the Complaint

would nonetheless be dismissed because the FDCPA claim is barred by the one-year statute of

limitations.[7] An action under the FDCPA must be brought "within one year from the date on

---

[6]      *See* Compl. ¶¶  34, 39, 40, 42, 44, 49, & 50 (asserting, *inter alia*, "Deeck has been
deprived the credit for the value of the real estate sale proceeds by way of [Defendants'] use of
an alter ego to collect debts owed them[;]" "Defendants have no lawful justification to appreciate
the benefits of the real estate without making proper credit to Plaintiff[;]" and "[Blackchair]
cannot retain the benefit of the sale without credit to [Deeck] in the Delaware County confession
of judgment action").  *See also* Resp. at 1 (arguing that "[t]he Defendants have captured the
surplus equity from selling the real property at issue after having obtained the Certificate from
Cape May County, New Jersey.  Having captured that surplus equity, the Defendants have made
no application of those proceeds against the Delaware County Pennsylvania confession of
judgment case (and settlement agreement)[,]" and that "Defendants have been unjustly enriched
insofar as there was an obligation to place sale proceeds in escrow for purposes of the
Pennsylvania Confessed Judgment litigation").

[7]      Without the FDCPA claim, federal question jurisdiction would be defeated, and this
Court would not exercise supplemental jurisdiction over any remaining state law claims.

which the violation occurs." 15 U.S.C. § 1692k(d).  Although there is a circuit split as to when

exactly a "violation" occurs under the FDCPA,[8] under either standard, Plaintiffs' complaint was

untimely in this case.  The underlying foreclosure action was initiated on March 23, 2021, and a

final disposition was entered in that case on May 11, 2022,[9] nearly two years before Plaintiffs

initiated this action on May 7, 2024.  *See* Compl.  Therefore, even if this Court had jurisdiction

and even if Plaintiffs could otherwise properly state an FDCPA claim, which the Court doubts,

the time has long since passed for Plaintiffs to bring a claim under this Act.

## C.    Plaintiffs Cannot Collect Costs of Service

The only issue that remains in this case is Plaintiffs' motion for taxation of costs for

Defendants' failure to waive service of the summons and complaint under Federal Rule of Civil

Procedure 4(d)(2).  *See* Mot. Costs, ECF No. 20.  Plaintiffs request the Court to enter an order

granting them costs in the amount of $345.66.  *Id.*  Defendants filed a response in opposition,

claiming that Plaintiffs are not entitled to costs for failing to comply with Rule 4 by serving their

attorney, in lieu of an authorized agent of Defendants.  *See* Def. Resp., ECF No. 20.  The Court

agrees with Defendants that Plaintiffs are not entitled to costs.

"An individual, corporation, or association that is subject to service under Rule 4(e), (f),

or (h) has a duty to avoid unnecessary expenses of serving the summons."  Fed. R. Civ. P.

4(d)(1).  Consequently, a plaintiff "may notify such a defendant that an action has been

---

[8]      "The circuit courts are split as to whether a 'violation' occurs on the date the underlying collection action is filed in court, *Naas v. Stolman*, 130 F.3d 892, 893 (9th Cir. 1997), or on the date that the complaint is served upon the plaintiff, *Johnson v. Riddle*, 305 F.3d 1107, 1113 (10th Cir. 2002).  The Third Circuit has thus far declined to decide which standard is the correct one." *Lee v. Powers Kirn, LLC*, No. 17-4569, 2018 U.S. Dist. LEXIS 20971, at *5-6 (D.N.J. Feb. 7, 2018) (citing *Schaffhauser v. Citibank (S.D.) N.A.*, 340 Fed. App'x 128, 130-31 (3d Cir. 2009)).
[9]      *See Blackchair Funding LLC, vs. The Bronson LLC, et al.*, No. F-1478-21 (N.J. Sup. Ct. Ch. Div. 2021).

commenced and request that the defendant waive service of a summons." *Id*.  This notice and

waiver request must follow several guidelines set by Rule 4.  *See id*. at 4(d)(1)(A)-(G).  Among

other things, the notice must be in writing and addressed to the individual defendant, or, "for a

defendant subject to service under Rule 4(h), to an officer, a managing or general agent, or any

other agent authorized by appointment or by law to receive service of process[.]" *Id*. at

4(d)(1)(A)(i)-(ii).  If a defendant fails "without good cause" to return a requested waiver, then

"the court must impose on the defendant: (A) the expenses later incurred in making service; and

(B) the reasonable expenses, including attorney's fees, of any motion required to collect those

service expenses."  Fed. R. Civ. P. 4(d)(2).

Plaintiffs bear the burden of showing compliance with Rule 4 in order to request costs.

However, Defendants point out that they were not properly served with the waiver documents, as

Plaintiffs sent it to counsel for Defendants, Thomas A. Musi, Jr.  Service of process on a

corporation's "agent" is sufficient only if that person is "authorized by appointment or by law to

receive service of process." Fed. R. Civ. P. 4(e)(2).  Here, Plaintiffs have not presented any

evidence that Attorney Musi was an authorized agent of Defendants, whether implied in fact or

otherwise, and the attorney-client relationship does not on its own suffice to make an attorney an

authorized agent of a client-corporation.  *See e.g.*, *Ransom v. Brennan*, 437 F.2d 513, 518 (5th

Cir. 1971) ("[S]ervice of process is not effectual on an attorney solely by reason of his capacity

as attorney[.]"); *Schultz v. Schultz*, 436 F.2d 635, 639 (7th Cir. 1971) ("[T]he fact that [the

attorney] was defendant's attorney in an unrelated action furnishes no basis for the validation of

the service of process on him as such[.]"); *Santos v. State Farm Fire & Cas. Co*., 902 F.2d 1092,

1094 (2d Cir. 1990) ("[Plaintiff] has shown no basis for an inference that [Defendant] had

authorized its attorneys to accept service of process on its behalf[,]" and "service of process on

an attorney not authorized to accept service for his client is ineffective[.]" (citation omitted));

*Pochiro v. Prudential Ins. Co. of Am.*, 827 F.2d 1246, 1248-49 (9th Cir. 1987) (explaining that

"service of a complaint on an attorney [is] ineffective unless [the] attorney has specific authority

to accept service" and the plaintiffs failed to claim that the law firm that represented the

defendant in a previous action was authorized to accept service of process in the present action)

(citation omitted)).  Therefore, because Plaintiffs failed to comply with the requirements of Rule

4(d), and because this noncompliance is not merely a technical violation, Plaintiffs' request for

costs is denied.

## V.      CONCLUSION

Since this Court lacks jurisdiction over the instant case, and for the reasons articulated

above, Defendants' motion to dismiss is granted.  Any attempt to amend the Complaint would be

futile and therefore leave to do so will not be granted.  *See Grayson v. Mayview State Hosp.*, 293

F.3d 103, 111 (3d Cir. 2002) (holding that a court should grant a plaintiff leave to amend a

deficient complaint in the absence of undue delay, bad faith, dilatory motive, unfair prejudice, or

futility of amendment).  Plaintiffs' motion for taxation of costs is denied.

A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*_____
JOSEPH F. LEESON, JR.
United States District Judge